N. F. TRACY v. NELLIE LUCIK, *et vir*. THE FIRST ATLANTIC NATIONAL BANK OF DAYTONA BEACH, FLORIDA, a Corporation, Garnishee.

189 So. 430
Opinion Filed May 19, 1939
Rehearing Denied June 17, 1939

*John S. Byington,* for Plaintiff in Error;

*John R. Parkinson* and *Hugh McMillan,* for Defendants in Error.

BUFORD, J.—Writ of error for review judgment denying original and supplemental motions to quash writ of garnishment and declining to permit the establishment by the judgment debtor of a claim of homestead exemption in this proceeding at this time, and also denying petitioner's motion in the alternative to transfer the cause to the Chancery side of the court. The pertinent facts in this case appear to be as follows:

On April 13, 1938, final judgment was entered in favor of one Nellie Lucik, joined by her husband J. Cliff Lucik, against one N. F. Tracy for the sum of $1,425.64, together with $10.95 costs. Thereafter on August 25, 1938, affidavit

in garnishment was filed wherein it was alleged that there was a balance due on the judgment in the sum of $315.00 and that The First National Bank of Daytona Beach, Florida, a corporation, "is indebted to said defendant, or has effects or property of said defendant in its hands, custody or control and prays that a writ of garnishment issue commanding the said The First National Bank of Daytona Beach, Florida, to appear and answer according to law in such case made and provided." Writ of garnishment issued to the Bank. Return was made showing service on the Bank. The Bank answered the garnishment alleging that it was indebted to the defendant Tracy in the sum of $103.11 and was so indebted at the time the service of the garnishment was made and that it had been so indebted from the date of the service of the garnishment to the date of the return, and that the garnishee Bank does not know of any person indebted to the said N. F. Tracy or whom may have any of the effects of said defendant in his hands or control.

Praecipe for final judgment against the garnishee Bank was filed and judgment was entered on the 8th day of September, 1938. Thereafter, on October 3, 1938, the defendant filed his motion to quash the writ of garnishment "and/or stay and suspend all proceedings thereon," stating five grounds, as follows, to-wit:

"1. No service of process of said writ of garnishment was had upon said defendant.

"2. Because a writ of garnishment is ancillary to the main proceeding herein and severable from the main cause.

"3. No copy of said writ of garnishment, or notice thereof was served upon the defendant.

"4. Because without service of said writ or notice thereof, the defendant is deprived of his day in court.

"5. Because said writ of garnishment and any rights

acquired under it by the plaintiff is void, in that it violates fundamental law and especially Section 12, Declaration of Rights, Florida Constitution."

The plaintiff moved to quash the affidavit of exemption, stating a number of grounds.

Supplemental motion to quash the garnishment was filed, stating the following grounds:

"A. That his said application for homestead exemption and affidavit was delivered to Hon. W. H. Campbell, Deputy Sheriff in and for Volusia County, Florida, on Saturday, the 17th day of September, A. D. 1938, for service upon the plaintiff herein or her attorney; that service thereof was made upon Hon. Hugh MacMillan, associate counsel for John R. Parkinson, and the same person who made the affidavit in Garnishment after Judgment as appears of record, at the hour of 1:00 o'clock P. M. on Monday, September 19, 1938, and that said plaintiff has filed notice of contest thereof, all of which appears by reference to defendant's Exhibits 'A' and 'B', respectively.

"B. That defendant's motion to quash writ of garnishment and/or stay proceedings thereon was drawn Saturday, September 17, and copy thereof and notice of argument was given plaintiff's attorney on last aforesaid date by sending the same through the mail as is shown of record herein and that plaintiff and her attorneys well knew that defendant claimed his exemption in and to said moneys and funds garnished on Monday, September 19, 1938; that plaintiff or her attorneys had no legal right to receive or accept the money or property of defendant alleged to have been paid over by the garnishee pursuant to Final Judgment in Garnishment.

"C. That if said property or money has in fact been paid over by the Garnishee, said payment was illegal and a voluntary payment in that no execution was issued said

Final Judgment in Garnishment and no execution pursuant thereto was issued or served or levied upon the Garnishee as required by law and specifically by Section 5293, Compiled General Laws of Florida, 1927.

"D.   That on Monday, September 19, 1938, at the hour of 1:30 P. M., the defendant furnished a copy of said application for homestead exemption and affidavit of the defendant to Emory Thames, Assistant Cashier of said Garnishee Bank, and defendant's attorney was advised by said Emory Thames that said Garnishee Bank would stop payment upon any check issued by said Bank to said John R. Parkinson, attorney for Nellie Lucik, joined by her husband J. Cliff Lucik, and so it is the defendant verily believes that the said moneys and property of the defendant attempted to have been garnished herein has not been paid over by the Garnishee.

"E.   Defendant denies that the garnishee has discharged any indebtedness to the defendant pursuant to the Final Judgment in Garnishment entered herein and further says that any attempted discharge is illegal, contrary to law and. void.

"F.   The defendant further says that the sum of One Hundred Three and 11/100 ($103.11) Dollars, belonging to the defendant and exempt under the law is being held under writ of garnishment issued herein.

"G.   Defendant further says that he is the head of a family under the meaning of and under protection of Article 10 of the Constitution of the State of Florida and the Laws of the State of Florida, that he is entitled in every respect to avail himself of said exemption and has done everything on his part required to be done in order to avail himself of said exemption and that he still insists and relies thereupon in all respects and to that end, defendant prays,

"1.  That Your Honor will vacate, quash and set aside said Writ of Garnishment and proceedings had thereupon.

"2.  That the court will set apart defendant's exemption of personal property herein claimed by him and will determine, order, adjudge and decree that the personal property claimed by defendant to be exempt is so exempt and that said sum of One Hundred Three and 11/100 ($103.11) Dollars be released from said Writ of Garnishment and that said Writ of Garnishment be discharged."

Exhibit "A" attached to that motion was as follows:

"STATE OF FLORIDA,  
"COUNTY OF VOLUSIA.  SS.

"Before the undersigned, an officer duly authorized to administer oaths, personally appeared N. F. Tracy, who being first duly sworn deposes and says: That he is a bone fide resident of Volusia County, Florida, and has resided in the State of Florida continuously for more than twenty years, and is at the time of making this affidavit a bona fide resident of Volusia County, Florida; that he is the head of a family under the meaning and under protection of Article X of the Constitution of the State of Florida; that he is entitled in every respect to avail himself of the Laws of the State of Florida, and to the Constitution of Florida; that he is entitled to the Homestead and exemptions as set forth in Article X of the Constitution of the State of Florida, and that the attached inventory contains the true and correct list or schedule of all the personal property owned by him in the State of Florida, and the true cash value thereof; that deponent claims that all moneys on deposit in the First Atlantic National Bank of Daytona Beach, Volusia County, Florida, in deponent's name is exempt from that certain Writ of Garnishment issued out of the Circuit Court, Seventh Judicial Circuit,

in and for Volusia County, Florida, in that certain garnishment proceeding wherein Nellie Lucik, joined by her husband, J. Cliff Lucik, was plaintiff, and First Atlantic National Bank was garnishee; and deponent claims an exemption of said moneys in said Atlantic National Bank of Daytona Beach, Florida, according to the laws and statutes of the State of Florida in such cases made and provided."

Inventory of the personal property of Tracy was filed, as follows:

"INVENTORY OF THE WHOLE OF THE PERSONAL PROPERTY of N. F. TRACY, A RESIDENT OF VOLUSIA COUNTY, STATE OF FLORIDA:

| | |
|---|---|
| Moneys on deposit in the name of N. F. Tracy in First Atlantic National Bank at Daytona Beach (some of which is subject to outstanding checks) | $103.11 |
| Clothing and wearing apparel | 75.00 |
| One cedar chest | 15.00 |
| One trunk | 4.00 |
| Total | $197.11 |

"STATE OF FLORIDA,
"COUNTY OF VOLUSIA.

"The within application for Homestead Exemption came to hand on the 17th day of September, A. D. 1938, and I executed the same in Volusia County, Florida, on Monday the 19th day of September, A. D. 1938, at the hour of 1:00 o'clock P. M. by delivering a true copy of the original unto Hugh MacMillan, associate counsel of John R. Parkinson, attorney for Nellie Lucik, joined by her husband, J. Cliff Lucik, plaintiffs, and exhibiting this original unto him made known the contents thereof to the said Hugh MacMillan,

associate counsel of John R. Parkinson, attorney of record for the said Nellie Lucik, joined by her husband J. Cliff Lucik, plaintiffs."

Thereafter, plaintiffs filed notice of contest of the homestead exemption, as follows:

"To the Sheriff of Volusia County, Florida:

"Come now the plaintiffs, by their undersigned attorney of record, and enter their notice of contest to the claim of exemption made by the defendant, N. F. Tracy, as to both the inventory and the right of the defendant to claim exemption.

"John R. Parkinson,
"Attorney for Plaintiffs."

On October 3, 1938, defendant Tracy filed his petition in words and figures, as follows:

"Comes now the defendant N. F. Tracy, a citizen and resident of Daytona Beach, Volusia County, Florida, by his attorney John S. Byington, and alleges and says:

"1.   That he is a bona fide resident of Daytona Beach, Volusia County, Florida, and has resided in the State of Florida continuously for more than twenty years last past, and at the time of filing this Petition he is a bona fide resident of Volusia County, Florida, and a citizen of the State of Florida; that he is the head of a family under the meaning and protection of Article X of the Constitution of the State of Florida, and is entitled in every respect to avail himself of the exemptions allowed and set forth in Article X of the Constitution of the State of Florida, and has claimed his rights and privileges thereto as hereinafter set forth.

"2.   That on the 25th day of August, 1938, a Writ of Garnishment was issued out of the Circuit Court of Volusia County, Florida, and served upon the First Atlantic Na-

tional Bank of Daytona Beach on said date and thereafter on the 5th day of September, 1938, the said Garnishee, First Atlantic National Bank of Daytona Beach, filed its answer to the effect that it had One Hundred Three and 11/100 ($103.11) Dollars in its hands belonging to the defendant, N. F. Tracy, all of which will more fully appear by reference to the records in said cause.

"3. That thereafter, to-wit: on the 17th day of September, 1938, the defendant N. F. Tracy, filed his certain affidavit and claim for homestead exemption with the Sheriff of Volusia County, Florida, and thereafter, to-wit: on the 19th day of September, 1938, at the hour of 1:00 o'clock P. M., the aforesaid application and claim for homestead exemption was duly served upon plaintiff's attorney, which will more fully appear by reference to Exhibit 'A' attached to defendant's supplemental motion on file herein and at about the hour of 1:30 P. M. on said 19th day of September, 1938, defendant's attorney served a true copy of said defendant's application and claim for homestead exemption upon Mr. Emory Thames, assistant cashier of the First Atlantic National Bank of Daytona Beach, Florida, the garnishee.

"And the defendant says that the plaintiff and her attorneys well knew that said defendant claimed and was insisting upon his claim and application for homestead exemption in and to said garnishee Bank for the reasons and matters set forth and alleged in defendant's supplemental motion on file and of record herein.

"4. That some time during the morning of September 19th, 1938, the garnishee Bank delivered to Hon. Hugh McMillan, associate counsel for plaintiff in said cause, a cashier's check in the sum of One Hundred Three and 11/100 ($103.11) Dollars and payable to the order of John R. Parkinson, attorney for Nellie Lucik; the said sum being

the sum of money in said garnishee's hands belonging to the defendant, and that said garnishee Bank upon being notified and having notice of defendant's claim and application for homestead exemption . claimed by him, stopped payment upon said check in the hands of plaintiff's attorney, and so it is that defendant says that the said sum of money, to-wit: One Hundred Three and 11/100 ($103.11) Dollars in said garnishee's' hands has not been paid to said plaintiff or her attorney, but that said sum still remains in said garnishee's hands undiminished and subject to the rights and cliams of defendant.

"5. The defendant further says that in the early Spring of this year his said wife died and that he has suffered in addition thereto reverses in business and that he is rendered practically penniless; that he has two sons, one of age, and another seventeen years of age, the latter whom he is endeavoring to educate and that the schedule of the personal property set forth in said claim and application for homestead exemption is all the property that he owns, that the same is filed and claimed by him in good faith and not for the purpose of hindering or delaying payment to his creditors, either judgment creditors, or otherwise, and that the aforesaid sum of money in the hands of said garnishee Bank is not subject to the payment of the judgment of the plaintiff and that said defendant still claims and insists upon his exemption thereto.

"6. The defendant says that due to his poverty he is unable to give bond or indemnity or other security in the premises.

· "WHEREFORE, the premises considered, the defendant prays as follows:

"A. That the court will hear evidence as to defendant's right to said exemption claimed by him.

"B. That the court will set apart · defendant's exemption

of personal property herein claimed by him, and will order, adjudge and decree that the aforesaid personal property claimed by defendant to be exempt is so exempt, and that said sum of One Hundred Three and 11/100 ($103.11) Dollars be released from said Writ of Garnishment and that said Writ of Garnishment be discharged.

"C. And in the alternative and only in event that the court does not grant the above and foregoing prayers, or either of them, the defendant prays further that;

"A-1. That the court transfer said cause to the equity side of the court, and have set apart to said defendant an amount not exceeding One Hundred Ninety-seven and 11/100 ($197.11) Dollars of personal property, as exempt from levy or sale under process of any court and particularly under said Writ of Garnishment in favor of the plaintiff herein.

"B-1. That said plaintiff, to-wit: Nellie Lucik, joined by her husband J. Cliff Lucik, and her said attorneys, and each of them, be restrained and enjoined from cashing or otherwise receiving payment of, from or upon said cashier's check issued by said First Atlantic National Bank of Daytona Beach, Florida.

"C-1. That said garnishee, to-wit: First Atlantic National Bank of Daytona Beach, Florida, be enjoined and restrained from paying out or otherwise divesting itself of said sum of money in its hands, to-wit: the said sum of One Hundred Three and 11/100 ($103.11) Dollars now in its hands and belonging to and being the property of said defendant.

"D-1. That the Honorable Court grant unto said defendant such other and further relief in the premises as to His Honor shall seem agreeable to equity and good conscience."—on which the court entered its order and judgment hereinabove stated. In that order the court says:

"And now this matter coming on this day to be heard as a continuance of the hearing held on the 22nd day of September, 1938, upon a motion to quash a writ of garnishment entered herein, a supplementary motion alleging further facts in support of said original motion to quash said writ, a motion to quash the affidavit of exemption of the defendant in this cause, said affidavit of exemption appearing in said supplementary motion to quash, and a further petition of the defendant filed this day supplementing the motions heretofore filed by said defendant, and further praying in the alternative for a transfer of said cause to the Chancery side of this court, and it appearing to the court that the original motion to quash the writ of garnishment for the reason that no notice of said garnishment was given to the defendant should be denied, and it appearing further that the claim of homestead exemption contained in the petition supplementing the original motion to quash the writ of garnishment was filed subsequent to the delivery by the garnishee to the plaintiff of a cashier's check in payment of the judgment in garnishment, although not actually cashed by said plaintiff on this date, and that, therefore, such claim comes too late and should be denied, it is, thereupon on consideration thereof,"

It appears from that part of the order above quoted that the court was of the opinion that the judgment debtor could not claim the funds in bank as exempted under the homestead provisions of our Constitution or the indebtedness of the bank to him as a depositor after the bank had issued its cashier's check, though the check had not been paid and payment had been stopped pending judgment in the homestead exemption proceedings.

The sufficiency of the allegations of the petition for homestead exemption appears not to have been determined. Therefore, we are not called upon to adjudicate the suf-

ficiency of the allegations but we may say in passing that the allegations were sufficient to show that the petition was not entirely without equity. The cause should have been transferred to the Chancery side of the court, the pleadings to be recast there so as to, if the facts would warrant, make a case for injunction against the paying over of the $103.11 which stood to the credit of the judgment debtor in the bank at the time the writ of garnishment was served to the judgment creditor.

A credit in bank is a chose in action and, therefore, is personal property. The money in the bank did not belong to the judgment debtor, but the bank was indebted to him in the amount named. The issuance of the Cashier's check did not constitute a paying out of the funds.

The record showed that no notice of the writ of garnishment was served on the defendant and that as soon as he had notice of the judgment in garnishment against the bank he moved to exempt the credit in the bank from execution.

In the case of West Fla. Grocery Co., *et al.,* v. Teutonia Fire Insurance Co., 74 Fla. 220, 77 Sou. 209, we said: "The words 'indebtedness due' in the Florida garnishment statute refer to a debt due or to become due absolutely and without depending on any contingency.

"The provision in the Constitution of Florida that the homestead 'shall be exempt from forced sale under process' of any court' applies not only to formal and technical process, but to any judicial proceedings, in law or in equity, which seek the appropriation of the property to the payment of debts.

"Provisions for homestead exemption whether Constitutional or statutory should be given liberal construction in favor of the person entitled to them."

And in the body of the opinion it was said:

"The exemption of 'one thousand dollars' worth of per-

sonal property, is as sacred as any other part of the homestead exemption and a person claiming it is entitled to the protection of the courts in any proceeding which seeks the appropriation of it to the payment of debts. It is true that the constitutional provision is that it 'shall be exempt from forced sale under process of any court,' but that will not be construed to mean that where it is sought to take from a person rightfully claiming his homestead exemption of 'one thousand dollars' worth of personal property,' he cannot protect himself except from a forced sale. Such a construction would defeat the beneficient purpose of the Constitution, where, as in the instant case, the exemption claimed is in money.

"We think that the exemption provided for in the Constitution applied not only to formal and technical process, but to any judicial proceedings, of law or in equity, which seek the appropriation of the property to the payment of debts. In Hines v. Duncan, 79 Ala. 112, 58 Am. Rep. 580, the Court said: 'Statutes, conferring on a debtor the right to exemption of property from sale for the payment of debts have been generally regarded as founded in a humane and enlightened policy, having respect to the common welfare, as well as to the benefit of the individual debtor. Their obvious purpose is to secure to each family a home and means of livelihood, irrespective of financial misfortune, and beyond the reach of creditors; security of the State from the burden of pauperism, and of the individual citizen from destitution. Such statutes are entitled to a liberal construction, a construction in conformity with the benevolent spirit which moved their enactment. Whilst the language of the statute is 'shall be exempted from levy and sale under execution or other process for the collection of debts,' a formal technical process is not requisite. The exemption is, in spirit and substantially, from the payment

of debts; and the property is exempt from sale by either process of law or in equity, the subject of which is its appropriation to the payment of debts."

In McMicheal v. Grady, Sheriff, *et al.,* 34 Fla. 219, 15 Sou. 765, it was held:

"Our Constitution does not contemplate that the *right to exemption* that it gives shall be adjudicated and passed upon *as an issue* in any proceeding instituted to enforce a debt or to put a debt into the form of a judgment, but shields the property it exempts *'from forced sale under the process of any court.'* Its inhibitory hand is not actively lifted until a *forced sale under the process* of some court is attempted. When such sale is attempted then, no matter *when* it may be, the party clothed with the right, can call upon the proper courts to apply the shield that the Constitution guarantees to him. That he may waive the right of action that he might have against an officer to damages for a wrongful sale of exempt property, by standing idly by, without protest, until after the sale was made, we are not prepared, nor are we called upon now to decide; but we are satisfied that there can be no waiver of the constitutional right by a failure to assert or claim it until the forced sale is ordered or attempted that is inhibited by the organic law. In the case of Carter's Administrators v. Carter, *et al.,* 20 Fla. 558, this Court has expressly repudiated the doctrine of the Pennsylvania cases and has ranged itself on the side of those courts that hold that a party entitled to the benefit of the exemption cannot waive it by an express agreement to that effect contained in a promissory note. That such an agreement in a promissory note is inoperative as against the policy of the exemption laws. The decision of the court in that case is put upon the ground that: 'The object of exemption laws is to protect people of limited means and *their families* in the enjoyment of so much property as may

be necessary to prevent absolute pauperism and want, and against the consequences of ill-advised promises which their lack of judgment and discretion may have led them to make, or which they may have been induced to enter into by the persuasions of others.' In that case it was also held that when property which may be claimed as exempt from the satisfaction of debts has been sold or converted into funds by administrators, the heirs entitled may claim the value out of the funds in the hands of the administrators'.

"If a party entitled to the exemption cannot waive it by *express agreement* in a promissory note, founded on a valuable consideration because his family have an interest in it and because it would be against the policy of the law thus to allow him to defeat the protection that is designed for his family, it would seem to follow as' a corrollary that he could not effect such a waiver by parol declarations or by mere negative silence, or failure to act; or, as Thompson puts it in his work on Homestead Exemptions, Section 823: 'A right which I can not part with by express contract, because it is only in part mine, I can not for the same reason, lose by estoppel in consequence of my own act or failure to act.'"

So it is that as long as the Bank has not actually parted with the money to the judgment creditor, it cannot be logicaly concluded that the judgment debtor may not claim his homestead exemption in the chose in action against the Bank.

In State v. Tyler County State Bank, 277 S. W. 625, 42 A. L. R. 1347, it was said:

"An ordinary check is simply a written order of depositor to his bank to make a certain payment and is executory in its' nature, while a 'cashier's check' is one issued by authorized officer of a bank directed to another person, evidencing that payee is authorized to demand and receive upon pre-

sentation from bank amount of money represented by check, and like an ordinary check, it is also executory in its nature and revocable at any time before bank has paid it (citing Words and Phrases Second Series, 'check')."

In Amos v. Baird, *et al.,* 96 Fla. 181, 117 Sou. 789, we held:

"A cashier's check given to a depositor as a mere acknowledgment of indebtedness on the part of the bank to him, being in legal effect the same as a certificate of deposit or a certified check, does not amount to an assignment to him by the bank of the amount of the check so as to give him any better right against the receiver of the bank than he had by reason of his original deposit."

The record shows that it is still within the power of the Bank to apply the credit of $103.11 either to the account of the judgment debtor or to the account of the judgment creditor, as the Court shall order and decree, and it is within the power of the Court on a sufficient showing to adjudicate the cancellation of the cashier's check issued to the judgment creditor and to decree that the credit is the property of the judgment debtor subject to homestead exemption.

As heretofore stated, the question of whether or not the judgment debtor can show that he is the head of a family residing in this State is a question of fact to be alleged and proved.

For the reasons stated, the judgment is reversed and the cause remanded for further proceedings not inconsistent with the view herein expressed.

So ordered.

Terrell, C. J., and Whitfield, Brown and Chapman, J. J., concur.

Thomas, J., dissents.