**INDUSTRIAL PARK DEVELOPMENT CORPORATION, Plaintiff,**

v.

**AMERICAN EXPRESS BANK, FSB, Defendant.**

**Case No. 6:12–cv–621–Orl–36GJK.**

United States District Court, S.D. Florida, Orlando Division.

June 21, 2013.

Earl M. Barker, Jr., Hollyn June Foster, Slott, Barker & Nussbaum, PA, Jacksonville, FL, Sheryl G. Hopkins, Bell & Roper, PA, for Plaintiff.

Joel V. Lumer, Kahan Heimberg, PLC, Boca Raton, FL, for Defendant.

### ORDER

CHARLENE EDWARDS HONEYWELL, District Judge.

This cause comes before the Court upon Defendant American Express Bank, FSB's ("Defendant") Motion to Dismiss Plaintiff Industrial Park Development Corporation's ("Plaintiff") Amended Complaint, filed on February 26, 2013 ("Motion to Dismiss") (Doc. 36). On March 12, 2013, Plaintiff filed a Memorandum in opposition ("Opposition") (Doc. 45). On May 16, 2013, the Court held a hearing on Defendant's Motion to Dismiss. *See* Doc. 58. At that hearing the Court granted Defendant's Motion to Dismiss and indicated that a written order would follow. For the reasons stated on the record and that follow, the Court grants Defendant's Motion to Dismiss.

## I. BACKGROUND

### A. Facts [1]

Plaintiff is a Florida corporation, whose principal place of business is in Orange County, Florida. Doc. 35, ¶ 5. Defendant is a Federal Savings Bank authorized to conduct business in Florida. *Id.* at ¶ 6.[2]

At all times relevant to this action, Plaintiff maintained an account bearing number 0215252008441, at SunTrust Bank, National Association ("SunTrust"), in which it deposited and maintained its funds. *Id.* at ¶ 15. Beginning on or about July 7, 2006 and continuing through or around October 22, 2009, Plaintiff alleges that Defendant initiated unauthorized automated clearing house withdrawals ("ACH Withdrawals") from Plaintiff's bank account totaling $1,711,403.96. *Id.* at ¶ 18.[3] On January 13, 2010, Plaintiff wrote a letter to Defendant, demanding that it return the money it had removed from Plaintiff's SunTrust accounts via unauthorized

---

1. The following statement of facts is derived from Plaintiff's Amended Complaint (Doc. 35), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F.2d 989, 994 (11th Cir.1983).

2. In its original Complaint, Plaintiff alleged that Defendant was a New York Corporation. Doc. 2, ¶ 3. In its Amended Complaint, Plaintiff has not alleged Defendant's citizenship.

3. Plaintiff attached a schedule of the dates and amounts of each unauthorized ACH Withdrawal to the Amended Complaint. Doc. 35–Ex. 1.

ACH withdrawals. *Id.* at ¶ 24; *see* Demand Letter, Doc. 35–Ex. 2.

Plaintiff alleges that although $288,488.40 of the amount withdrawn from Plaintiff's accounts has been returned, the remaining balance of what has not been returned equals $1,422,942.43. *Id.* at ¶ 25; *see* Doc. 35–Ex. 1.

### B. Procedural History

On April 24, 2012, Plaintiff filed a Complaint in the Circuit Court, Ninth Judicial Circuit, in and for Orange County, Florida. Doc. 2. Defendant filed a Notice of Removal, removing this action pursuant to diversity jurisdiction. Doc. 1; *see* 28 U.S.C. § 1332. On February 1, 2013, 2013 WL 406815 this Court granted Defendant's Motion to Dismiss (Doc. 10), permitting Plaintiff leave to file an amended complaint which corrected the deficiencies identified in the Complaint. *See* Doc. 34, pp. 3–9.

On February 13, 2013, Plaintiff filed an Amended Complaint. Doc. 35. In its Amended Complaint, Plaintiff asserts one cause of action against Defendant, for common law conversion. *Id.* Plaintiff alleges that "Defendant has obtained, received or deprived Plaintiff of its funds, rights and property in Plaintiff's account, the funds deposited therein and the right to withdraw and have use and possession therefore, in the amount or amounts hereinabove alleged, either permanently or for an indefinite period of time; and, accordingly, thereby unlawfully converted Plaintiff's property to Defendant's use and benefit." *Id.* at ¶ 29.

Subsequently, on February 26, 2013, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. Doc. 36. On March 12, 2013, Plaintiff filed its Opposition. Doc. 45. At the May 16, 2013 hearing on Defendant's Motion to Dismiss, the Court determined that Plaintiff's Amended Complaint does not state a plausible claim for relief for common law conversion, and thus it would be dismissed with prejudice. *See* Doc. 59.

### II. STANDARD

To survive a motion to dismiss, a pleading must comply with Fed.R.Civ.P. 8(a)(2) by including a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere naked assertions, too, are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, 129 S.Ct. 1937.

### III. ANALYSIS

#### A. Plaintiff has not stated a claim for conversion

In its Amended Complaint, Plaintiff reiterates its sole claim of common law conversion against Defendant, based on allegedly unauthorized ACH withdrawals made by Defendant from Plaintiff's SunTrust account between 2006 and 2009. Doc. 35, ¶¶ 18, 29. Although Plaintiff maintains that the Amended Complaint "expands upon the allegations of the initial Complaint," it essentially reiterates the same factual allegations, but adds argumentative

claims. *Id.* For example, Plaintiff appears to argue in the Amended Complaint that the National Automated Clearing House Association Rules ("NACHA Rules") and Article 4A of the Uniform Commercial Code ("UCC") do not apply to the transactions at issue. *See id.* at ¶¶ 16, 17, 28.

Upon reviewing the pleadings, relevant case law, and hearing arguments from both parties, the Court determined that Plaintiff failed to state a claim for conversion under Florida law, and thus Plaintiff's Amended Complaint will be dismissed.[4] *See* Doc. 59.

 Under Florida law, conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite period of time." *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir.2001). Thus, in order to state a claim of conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property. *Edwards v. Landsman*, 51 So.3d 1208, 1213 (Fla. 4th DCA 2011). Here, Plaintiff's Amended Complaint fails to state a claim for relief because Plaintiff did not possess sufficient interest in the money at issue and has no cause for conversion against Defendant.

### i. Plaintiff did not have sufficient interest in the funds to support a conversion claim

 First, as the Court explained, Plaintiff does not allege that its funds were

of the specific nature required to support a conversion claim. *See Carl v. Republic Security Bank*, 282 F.Supp.2d 1358, 1366 (S.D.Fla.2003) ("The simple deposit of money, check or draft in a commercial bank on account of the depositor, without being complicated by any other transaction than that of depositing and withdrawing money, is a general deposit."); *In re Tomasevic*, 273 B.R. 682, 687 (Bankr. M.D.Fla.2002) ("The bank correctly states the law. 'When a party deposits funds in a bank, the funds become the bank's property.'"). The law is clear that the mere obligation to pay money will not be enforced by an action for conversion. *Intabill, Inc. v. Elie*, 2009 WL 3232520, *2 (M.D.Fla.2009); *Capital Bank v. G & J Invs. Corp.*, 468 So.2d 534, 535 (Fla. 3d DCA 1985). In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue. *Id.; see also Wachovia Bank v. Tien*, 534 F.Supp.2d 1267, 1286 (S.D.Fla.2007). Here, Plaintiff has not alleged any facts suggesting the requirement that the transactions at issue involved a specific deposit. *See* Doc. 35.

### ii. Plaintiff has no cause for conversion against a third party

Second, as the Court previously stated, Florida statutes specify that "[a]n action

---

**4.** Therefore, the Court need not address Defendant's additional arguments for why the Amended Complaint should be dismissed. For example, Defendant argues that Plaintiff's claim is barred by Article 4A of the Uniform Commercial Code ("UCC"). Doc. 36, pp. 5–6. Plaintiff maintains that Florida's codification of the UCC, in Chapter 670, does not apply to this case because it covers only "credit" and not "debit" transactions. Doc. 45, pp. 6–9. The Court has already explained

that while it believes the ACH transactions at issue appear to be "fund transfers" as contemplated by the UCC and Chapter 670, it need not determine whether these transactions are governed exclusively by the UCC and preempt common law causes of action. *See* Fla. Stat. § 674.101–104; *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So.2d 967, 970–971 (Fla. 3d DCA 1998); *see also* Doc. 34, pp. 3–6.

for conversion of an instrument may not be brought by ... [t]he issuer or acceptor of the instrument." Fla. Stat. § 673.4201(1)(a);[5] *see* Doc. 34, p. 6. An "issuer" is "a maker or drawer of an instrument." Fla. Stat. § 673.1051(3). Courts interpreting this statute hold that a drawer has no action in conversion against a bank other than its own drawee bank. *See Groom v. Bank of America*, 2012 WL 50250, *7 (M.D.Fla.2012) (concluding that Fla. Stat. § 673.4201(1) precludes the drawer of a checking account from a conversion action against the bank for checks the bank allegedly converted); *Cheese & Grill Restaurant, Inc. v. Wachovia Bank*, 970 So.2d 372, 375 (Fla. 3d DCA 2007) ("The drawer or maker of a check, has no right of direct action against banks, other than drawee bank, which honor a check on a forged or unauthorized endorsement.").

The exclusion of conversion actions by a drawer against a third party entity is founded on the principle that when a customer, such as Plaintiff, deposits funds into his account, the bank takes title to the money and owes a debt to its customer corresponding to the amount of the deposit. *See supra*, III.A.i; *Carl*, 282 F.Supp.2d at 1366 (plaintiff could not maintain an action for conversion of general deposit funds because he had no property interest in funds after they were transferred to a depository account); *Tracy v. Lucik*, 138 Fla. 188, 189, 189 So. 430 (1939). Because a depositor loses title to funds when they are deposited into an account, the funds become the property of the bank and the depositor no longer has sufficient interest in that property to assert a claim of conversion. *Id.; see* UCC

Comment to Fla. Stat. § 673.4201(1) ("There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer. The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check.").

Despite this Court's statement that reliance on certain cases was misplaced, Doc. 34, pp. 7–8, Plaintiff repeats its argument that it has sufficient interest in the money in its SunTrust account to support a conversion claim. Doc. 45, p. 15. Nevertheless, none of the cases Plaintiff cites support a claim of conversion by the holder of an account against a third party, with whom the plaintiff has no alleged relationship. For example, in *Senfeld v. Bank of Nova Scotia Trust Co.*, one bank sued a corporation whose account it managed, after the corporation refused to return the $10,000 that the bank had mistakenly transferred to its account. 450 So.2d 1157, 1160 (Fla. 3d DCA 1984). Similarly, *Goodwin v. Alexatos* involved the claim of a client against his attorney, alleging that the attorney wrongfully retained escrow funds and disbursed other funds incorrectly. 584 So.2d 1007, 1011 (Fla. 5th DCA 1991). In *Belford Trucking Co. v. Zagar*, the court explained that money can only be the subject of a conversion action when it can be readily identified with a special mark or, for example, when it has been put in a trust. 243 So.2d 646, 648 (Fla. 4th DCA 1971). In *Allen v. Gordon*, although the court recognized conversion for specific identified money withdrawn from a joint account, the action was between a man and

---

5. The Court is not persuaded by Plaintiff's insistence that these transactions are not "instruments" as contemplated by Florida Statute § 673.4201(1)(a) because they are not written instructions signed by the person giving the instruction to pay. Doc. 45, pp. 10–

11. Although Plaintiff is correct that allegations in its Amended Complaint must be taken as true for the purposes of deciding a motion to dismiss, it provides no support for the proposition that there is no "instrument" in the ACH fund transfer system. *See id.*

his stepfather, joint account holders. 429 So.2d 369, 371 (Fla. 1st DCA 1983).

 As discussed, courts interpret Florida statutes as precluding an action in conversion by the holder of an account against any bank other than its own. *See Groom*, 2012 WL 50250, *7; *Cheese*, 970 So.2d at 375; *see* UCC Comment to Fla. Stat. § 673.4201(1). Plaintiff provides no explanation for why SunTrust is not a party to this action, or how it is involved in the alleged ACH Withdrawals.[6] Indeed, because Plaintiff has failed to allege sufficient ownership interest in the property or a relationship with Defendant such that it could maintain a claim of conversion, the Court need not determine whether Plaintiff has alleged any awareness by Defendant that it was improperly withdrawing funds in order to establish a cause for conversion. *See Edwards*, 51 So.3d at 1213.

## IV. CONCLUSION

As the Court stated at the hearing on Defendant's Motion to Dismiss, it is evident that when Plaintiff deposited the funds at issue into an account with Sun-Trust, a non-party to this action, SunTrust took title to the funds and owed Plaintiff a debt in the amount of the deposit. There is no indication in the Amended Complaint that there was a specific identifiable amount of money in the case that would support a claim of conversion. *See Intabill*, 2009 WL 3232520, *2; *Tien*, 534 F.Supp.2d at 1285. Because Plaintiff no longer had sufficient interest in the funds and cannot support a cause for conversion against Defendant, a third party, its claim

for conversion cannot stand. *Carl*, 282 F.Supp.2d at 1366.

Accordingly, it is hereby **ORDERED:**

1. Defendant American Express Bank, FSB's Motion to Dismiss (Doc. 36) is **GRANTED.**

2. As no facts exist which would support a claim for conversion, Plaintiff Industrial Park Development Corporation's Amended Complaint (Doc. 35) is **DISMISSED with prejudice.**

3. The Clerk is directed to terminate any pending motions and deadlines as moot and close this case.

---

6. Indeed, Plaintiff's only comment on the issue of SunTrust, with whom it has a relationship of depositor-depositee, is insistence that the possibility that another party is liable, is not a defense to claims against Defendant.

*See* Doc. 45, p. 11. Further, Plaintiff insists that because Chapter 670 does not apply to the debit transactions at issue, it does not have a remedy against SunTrust. *Id.* (citing Fla. Stat. § 670.404).