970 So.2d 372 (2007)
CHEESE & GRILL RESTAURANT, INC., etc., Appellant,
v.
WACHOVIA BANK, N.A., etc., et al., Appellees.
Nos. 3D06-2672, 3D06-1286.
District Court of Appeal of Florida, Third District.
October 24, 2007.
Rehearing Denied November 21, 2007.
*373 Manzini & Associates and Nicolas A. Manzini, for appellant.
Ruden, McClosky, Smith, Schuster & Russell and John H. Pelzer, Robin F. Hazel and Matthew S. Nelles, Ft. Lauderdale, for appellees.
Before COPE, RAMIREZ and SALTER, JJ.
SALTER, J.
Appellant, Cheese & Grill Restaurant, Inc. (Restaurant) sued Washington Mutual Bank (WAMU) and Wachovia Bank (Wachovia) in separate circuit court lawsuits for checking account losses sustained in a fraud by the Restaurant's bookkeeper. In the case against WAMU, the trial court granted WAMU's motion for summary judgment and a final order of dismissal, and the Restaurant appealed. In the later case against Wachovia, the same trial court dismissed with prejudice the Restaurant's complaint against Wachovia, and the Restaurant appealed. The two appeals were consolidated here under the latter case number.
We affirm each of the judgments below, finding that: (1) the conceded cause of the losses was the Restaurant's own bookkeeper; (2) the Restaurant failed to detect and report the misapplications within the time period mandated by the applicable Florida Uniform Commercial Code provision and the agreements between the Restaurant and WAMU; and (3) as to WAMU, the Restaurant failed to establish that any genuine issue of material fact precluded summary judgment. In the case against Wachovia, that bank was merely the collecting bank and was not subject to direct claims by the Restaurant as drawer.
In a nutshell, the Restaurant never established any genuine issue of material fact that its losses were anything other than an "inside job" by the Restaurant's own trusted bookkeeper.
I. The Fraud
The undisputed facts, as detailed in the Restaurant's complaints and forgery affidavit, establish that the Restaurant opened an account with WAMU in 1995. Between May 14, 1999, and March 22, 2002, checks were prepared by the bookkeeper and were represented by him to be payments for the Restaurant's payroll and sales taxes. They were signed for the maker by an authorized Restaurant signatory, not the bookkeeper.[1] The forgery affidavit further discloses that the bookkeeper was known or suspected to have committed the theft or unauthorized use of the checks, and that "he is in charge of the accounting records, accounts payable, and payroll." The Restaurant first became aware of the misapplications on July 10, 2002, upon hiring another accountant to perform an independent review, and that review established that the purported payroll and sales tax checks "were not applied to our account." *374 The forgery affidavit identified the checks used by the bookkeeper in the embezzlement scheme by check number, payment date and dollar amount.
II. The Complaints Against WAMU
The Restaurant filed a complaint and amended it three times before the motion for summary judgment was filed. All were unverified and told a more complicated tale than the forgery affidavit. Paragraph Six of the third amended complaint claimed, for example, that the losses occurred as a result of WAMU's "carelessness and/or negligence and/or lack of ordinary care and/or through the intentional participation of one or more of its agents, employees or representatives acting as confederates of other tortfeasors, third parties (Plaintiff's former bookkeeper/accountant). . . ." No further specifics were provided, nor were any such specifics obtained by the Restaurant from the deposition of WAMU's fact witness on March 13, 2006, after WAMU filed a motion for summary judgment.
WAMU's motion for summary judgment established that monthly checking account statements were sent to the Restaurant during the periods in question, and that those statements showed the payment date, check number, and amount of each of the checks. WAMU's motion and affidavit also authenticated the WAMU "account disclosures and regulations" applicable to the account, setting forth the Restaurant's duties to retain control over all checks and "to promptly discover and report if any of them are missing in time to prevent misuse." The Restaurant also agreed to review the monthly statements and to report any error, forgery, alteration, unauthorized transaction, or other problem to WAMU within thirty days. The Restaurant agreed to assert any claim relating to any such matter within six months of the mailing of the statement reflecting the problem, and the Restaurant assumed "full responsibility for monitoring and reviewing the activity of [the Restaurant's] account and the work of [the Restaurant's] employees, agents, and accountants . . . whether or not the statements/reports contain the items bearing an unauthorized signature or alteration."
In response to the motion for summary judgment, the Restaurant moved for leave to file a proposed, unverified fourth amended complaint that would have added Wachovia as a defendant. The Restaurant also moved to continue the summary judgment hearing (heard approximately sixty days after the motion for summary judgment was filed, and two years after the lawsuit was filed). The Restaurant did not file any counter-affidavit or otherwise raise any genuine issue of material fact, and the Restaurant's own forgery affidavit (an attachment to the third amended complaint) actually described the details of the embezzlement by its bookkeeper.
The trial court granted partial summary judgment applicable to all but three of the checks, and the parties then stipulated to the dismissal of the claims relating to those checks so that a final judgment could be entered (and without prejudice to the reinstatement of the claims on the last three checks if the Restaurant prevailed here).
The Restaurant argues that its inability to make its case was impaired or delayed because WAMU failed to provide missing checks to the Restaurant until sometime in 2004. No such affidavit or verified allegation is found in the record, and the 2002 affidavit of forgery identifies the checks improperly cashed by the bookkeeper by number, date of payment and amount. The information on the back of the checks, ultimately obtained by the Restaurant, *375 was not part of the record and therefore did not create any genuine issue of fact that would preclude summary judgment. If the information had created such an issue, the Restaurant was required to raise the issue by affidavit, specific allegation, or otherwise as provided by Florida Rule of Civil Procedure 1.510.
The WAMU-Restaurant account disclosures and regulations obligated the Restaurant to monitor its own statements, to report any unauthorized payments within thirty days, and to assert any claim based on such payments within six months. This, the Restaurant admittedly did not do. Subsection 674.406(1) of the Florida Statutes provides that a statement of account provided by a bank is sufficient if each item is described by item number, amount, and date of payment. While it is true that WAMU was obligated to provide the items themselves to the customer "in a reasonable time,"[2] in this case the Restaurant never alleged or established how any delay in delivery of the items made WAMU responsible in any way for the embezzlement by the Restaurant's own bookkeeper.[3] The Restaurant's losses are a cautionary tale underscoring the need for what accountants refer to as "internal controls"  typically requiring, at a minimum, the segregation of the check issuance and account reconciliation functions within a business.
III. The Complaint Against Wachovia
The Restaurant's attempt to assert a claim against Wachovia is equally ill-fated as a matter of law. The Restaurant did not have an account at Wachovia and may not assert the rights of a maker or customer against that bank. The drawer or maker of a check (here, the Restaurant), "has no right of direct action against banks, other than drawee bank [here, WAMU], which honor a check on a forged or unauthorized endorsement." Jett v. Lewis State Bank, 277 So.2d 37, 39 (Fla. 1st DCA 1973).
V. Conclusion
Two years before the Restaurant commenced litigation, the Restaurant's principal signed an affidavit under oath describing the embezzlement, blaming it on the bookkeeper, and identifying the check numbers, dates, and amounts of the items involved. The Restaurant did not come forward with any counter-affidavit, interrogatory answer, deposition, or verified allegation to contradict that affidavit or the WAMU officer's affidavit. As in so many defalcations, the bank and its computers merely processed the checks provided to them by the embezzler, and there is no indication that anyone with either bank could or should have detected the scheme. Absent extraordinary circumstances that were not established here, Florida's Uniform Commercial Code and bank-customer agreements place the burden of reviewing statements and controlling the transmittal of signed checks upon the customer. H. Burdine-Coakley v. Capital Bank, 542 So.2d 1019 (Fla. 3d DCA 1989).
Affirmed.
NOTES
[1] The forgery affidavit, signed under oath by Francisco Arauz for the Restaurant on September 26, 2002, does not allege the invalidity or forgery of the maker's signature  only an unauthorized endorsement on the back of the checks.
[2] § 674.406(2), Fla. Stat. (1999).
[3] Although our research does not disclose such a case in Florida, a bank failing to provide its customer with copies of items questioned by the customer might be liable if, for example, its unreasonable delay in providing the items to its customer was shown to have prejudiced or precluded a timely claim against the embezzler. There is no such allegation here.