[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13400
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 13, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-23373-CV-JLK

REDLAND COMPANY, INC.,
a Florida corporation,

Plaintiff-Appellant,

versus

BANK OF AMERICA CORPORATION, a
foreign corporation authorized to
do business in the State of Florida,
f.k.a. Bankamerica Corporation,

Defendant,

BANK OF AMERICA, N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 13, 2009)

Before CARNES, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

The Redland Company appeals the district court's dismissal of its complaint against Bank of America. Redland contends that the district court misinterpreted Florida's law regarding commercial paper.

## I.

Redland is an engineering contracting company that specializes in road and highway construction. Its claims in this case are framed in terms of the ever-fascinating language of commercial paper law—the law of checks. But that is not really what this case is about. This case is about an alleged embezzlement scheme perpetrated by one of Redland's former executives. The mastermind of that alleged scheme was Frederick Bradford Nowell, Sr., who first served as Redland's controller and manager and was later promoted to vice president of the company. Nowell's duties included writing and signing checks on Redland's account at Community Bank of Florida to pay Redland's suppliers, vendors, and subcontractors. Trusting Nowell to perform those duties honestly appears to have been a mistake.

Redland alleges that from November 1997 to October 2006, Nowell wrote 171 checks totaling over $11 million on Redland's checking account to "NGI

Marine." NGI Marine was not one fo Redland's suppliers, vendors, or contractors. The checks were not written to pay Redland's expenses. Instead, Nowell took the checks, endorsed the back of them as "NGI Marine," and deposited them into an account at Bank of America that he controlled.

Redland received monthly account statements from Community Bank. As part of those statements, Community Bank sent Redland copies of the fronts of all of the checks written on its account—including the checks to NGI Marine. Despite having received that information from Community Bank, and despite the fact that it did no real business with NGI Marine, Redland did not uncover Nowell's embezzlement scheme until 2007. By then Nowell's account at Bank of America had been closed. Nowell and the money were gone. Litigation ensued.

Before Redland could attempt to recover its losses from Bank of America, it needed to lay some procedural groundwork. Under Florida law, Redland did not have a direct claim against Bank of America based on Nowell's embezzlement scheme. See Cheese & Grill Rest., Inc. v. Wachovia Bank, N.A., 970 So. 2d 372, 375 (Fla. 3d DCA 2007); Jett v. Lewis State Bank, 277 So. 2d 37, 39 (Fla. 1st DCA 1973). To get around that roadblock, Redland acquired Community Bank's claim against Bank of America for the breach of the presentment warranty between the two banks and filed a complaint asserting that claim against Bank of America.

Bank of America filed a Rule 12(b)(6) motion to dismiss Redland's complaint. One of its arguments was that Redland was required to allege, as part of its breach of presentment warranty claim, that Community Bank had provided Bank of America with notice that the checks to NGI Marine were unauthorized. The district court agreed, and it dismissed Redland's complaint with leave to amend so that Redland could add allegations concerning the required notice. Redland filed an amended complaint but did not add any allegations that either Redland had provided notice to Community Bank of the unauthorized checks or that Community Bank had provided any notice to Bank of America. Bank of America filed another motion to dismiss, which the district court granted, this time with prejudice. This is Redland's appeal.

## II.

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6). See Berman v. Blount Parrish & Co., Inc., 525 F.3d 1057, 1058 (11th Cir. 2008). In doing so, we accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should

4

be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 1008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)) (quotation marks omitted).

In the posture of this case, Redland stands in the shoes of Community Bank and alleges that Bank of America breached the presentment warranty that it owed to Community Bank. In Nowell's alleged embezzlement scheme, the checks he wrote were made payable to NGI Marine, and the checks were endorsed as NGI Marine, Account #3602817237. That account number matched an account controlled by Nowell at Bank of America. However, the name on the account was not NGI Marine. Instead, the account was held in the name of Nowell Group, Inc. Simply put, Redland seeks to hold Bank of America liable because the bank deposited checks made out to NGI Marine into an account held by Nowell Group, Inc.

Redland has not brought a typical commercial paper claim. No forged signatures or altered checks are involved. Nowell was authorized to write checks on Redland's behalf, and the checks that he wrote were cashed as written by the party for whom he intended them (himself). Nowell simply abused his check-writing authority to the tune of over $11 million.

Under Florida law, "the customer ha[s] an obligation to examine bank

5

statements and notify the bank" of any claimed errors or unauthorized activity. Lowenstein v. Barnett Bank of S. Fla., N.A., 720 So. 2d 596, 597 (Fla. 3d DCA 1998); Fla. Stat. § 674.406; see also Cheese & Grill, 970 So. 2d at 375. Cheese & Grill demonstrates that when a banking customer fails to notice an ongoing "inside job" of fraud by a trusted employee despite receiving regular statements from the bank, the court will not order another party to suffer the loss for the customer. See 970 So. 2d at 373–75 (affirming judgment against a bank customer where "its losses were [not] anything other than an 'inside job' by the Restaurant's own trusted bookkeeper"). Here, Redland did not give any notice to Community Bank of Nowell's embezzlement scheme until it was too late.

Redland cannot escape that fact by casting its claim as one for breach of a presentment warranty under Fla. Stat. § 673.4171. Redland's contention is that Bank of America breached its presentment warranty because Nowell Group, Inc. was not "a person entitled to enforce" the check made out to NGI Marine. See § 673.4171(1)(a). The official comment to § 673.4171 states that "[i]f the drawer's conduct contributed to a loss . . . the drawee should not be allowed to shift the loss from the drawer to the warrantor." Id. cmt. 6. Admittedly, that commentary applies where the loss is due to "forgery or alteration," id., and this case does not involve either. But the logic of the commentary applies with equal force here.

6

This case is just as much one where the drawer's conduct, in failing to review its bank statements and returned checks, contributed to the loss.

Several other sections of Florida's UCC further undermine Redland's claim (standing in the shoes of Community Bank) against Bank of America. First, under sections 673.1091 and 673.2052(2) of the Florida Code, once a check is endorsed by the party to which it was made out it becomes payable to the bearer of the check. Here, the checks that Nowell presented to Bank of America had been endorsed by NGI Marine, the party to which they were made out. Bank of America then deposited the checks into the account number listed on the check's endorsement. Second, section 673.1101 of the Florida Code provides that the party entitled to cash a check is determined based on the intent of the signer of the check.[1] Therefore, the technical discrepancy between the name on the checks (NGI Marine) and the name on the account (Nowell Group, Inc.) is ultimately

_____

[1]Section 673.1101 provides, in relevant part:

(1) The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.

. . .

(3) A person to whom an instrument is payable may be identified in any way, including by name, identifying number, office, or account number. . . .

Fla. Stat. § 673.1101

irrelevant because it is clear that Nowell intended the checks to be deposited into his account at Bank of America, and the intent of the signer of the check is what matters. Under these circumstances, it was Redland's responsibility to notice that something fishy was going on, not Bank of America's. Cf. Cheese & Grill Rest., 970 So. 2d at 373–75. Redland failed to do that.

Redland responds that an exception applies because it could not reasonably have detected the wrongdoing here. Community Bank only sent Redland the fronts of the checks, so it could not review the endorsements on the back of the checks. Further, it argues that the checks did not put it on notice that checks written to NGI Marine were being deposited into an account maintained by Nowell Group, Inc. Therefore, Redland argues that it did not have a duty to report the unauthorized checks. See Fla. Stat. 674.406(3). That argument fails. For years Redland received monthly statements, as well as copies of the fronts of its cancelled checks from Community Bank. That information was more than enough to put it on notice that unauthorized checks were being written to a company—NGI Marine—that apparently did not do business with Redland. It was Redland's duty to notice these unauthorized payments. There is no reason to believe that Redland would have discovered Nowell's embezzlement scheme if it had been given the benefit of reviewing the back of the checks at issue. Nowell did not sign the

8

checks in his own name; the endorsements on the checks simply stated "NGI Marine." The opportunity to review those endorsements would not have reasonably helped Redland uncover Nowell's fraud.

It is also a matter of common sense that Bank of America cannot be liable for Redland's losses. Nothing that Bank of America did reasonably contributed to Redland's loss. The blame rests most directly on the shoulders of Nowell, who went behind Redland's back and fleeced it of over $11 million. If Redland is looking to spread the blame further, it need look no further than the internal controls (or lack thereof) that it used to monitor its own finances.

Redland allowed millions of dollars to be embezzled without detection for nearly a decade. It cannot now hold Bank of America liable for its misfortune.

**AFFIRMED.**