[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12150
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 11, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00439-CV-T-27-MAP

S&B/BIBB HINES PB 3 JOINT VENTURE,
S&B ENGINEERS AND CONSTRUCTORS, LTD.,

Plaintiffs-Appellants,

versus

PROGRESS ENERGY FLORIDA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 11, 2010)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

This diversity action for breach of contract arises out of two multimillion

dollar fixed price contracts dealing with the construction of two electric generating plants in Polk County, Florida.[1] Contractor S&B/BIBB Hines PB3 Joint Venture and S&B Engineers and Constructors, Ltd. ("S&B") agreed to perform the engineering, procurement, and construction work on the plants for owner Project Energy Florida, Inc. ("Project Energy"). During the course of performance, four hurricanes struck Polk County and three hurricanes hit the Gulf Coast, resulting in a shortage of labor and materials and a corresponding increase in the cost of construction for S&B. Global economic forces also contributed to an unanticipated increase in S&B's materials costs.

S&B filed this action against Project Energy to recover approximately $40 million in additional compensation over and above the contract's firm, fixed price. S&B alleges that Project Energy breached the contracts by refusing to provide compensation for its unforeseen labor and materials costs. S&B also alleges that Project Energy wrongfully recruited and hired away S&B employees during the contract term, thereby breaching the contracts and aiding and abetting a breach of fiduciary duty by S&B employees.

The district court dismissed the majority of S&B's breach of contract and

---

[1] Because this is a diversity action, we interpret this contract according to the substantive law of Florida. Erie R.R. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S. Ct. 817, 821 (1938).

wrongful hiring claims on a Rule 12(b)(6) motion. S&B now seeks reinstatement of its claims, arguing that the district court misinterpreted the construction contracts and misapplied Florida law.

## I.      Breach of Contract

We review de novo the interpretation of a contract, Daewoo Motor Am., Inc. v. Gen. Motors Corp., 459 F.3d 1249, 1256 (11th Cir. 2006), and the dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Redland Co. v. Bank of Am. Corp., 568 F.3d 1232, 1234 (11th Cir. 2009). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

The district court concluded that the fixed price contracts foreclosed any recovery of additional compensation beyond the contract price. We agree. Section 11 of the parties' contracts addresses compensation. Section 11.A.1 provides that S&B, as the project contractor, "shall provide pricing for this Work at a firm fixed price." "A pure fixed price contract requires the contractor to furnish the goods or services for a fixed amount of compensation regardless of the costs of performance, thereby placing the risk of incurring unforeseen costs of performance on the contractor . . . ." Bowsher v. Merck & Co., Inc., 460 U.S. 824,

826 n.1, 103 S. Ct. 1587, 1590 n.1 (1983).  In a fixed price contract, "if the final total costs of the agreed upon services exceed the contracted price, the contractor takes the loss; conversely, he can profit if the costs are lower than the contract price."  United States v. White, 765 F.2d 1469, 1472 (11th Cir. 1985).

Section 11.A.1 of the contracts defines "the Work" that is to be provided for a firm, fixed price as "all material, equipment, workmanship, labor, engineering, and any other items or labor performed or furnished."  According to Section 11.C.8, another compensation provision: "No extra payment shall be allowed over and above the Contract Price except for work authorized by a Change Order or Amendment from Owner."

Despite the fixed price nature of the contracts and the absence of any change order or contract amendment, S&B argues that it is entitled to recover its additional labor and materials costs due to the hurricanes and global economic forces.  To support its claim, S&B relies on Section 37.A.3, which addresses S&B's rights and obligations if a Force Majeure event occurs during contract performance.[2]  Section 37.A.3, which is part of the contracts' "no damage for

_____

[2] According to Section 37.B.1 of the contracts, Force Majeure events include "adverse weather" and "labor disturbances."

4

delay" provision,[3] requires S&B to mitigate costs related to Force Majeure events, providing:

> Should contractor be delayed in the commencement, performance or completion of the Work due to any of the conditions provided for under Section 37B, Force Majeure, Contractor shall be entitled to an extension of time only, provided however, that <u>in no event shall Contractor be entitled to any increased costs, additional compensation, or damages of any type resulting from such Force Majeure delays,</u> upon the conditions as permitted and provided for under Section 37B. Contractor shall use all reasonable means to minimize the extent of any interference, disruption, hindrance, or delay as aforesaid and <u>to mitigate any and all costs</u> from or related to any such cause or occurrence.

(emphasis added). S&B reads Section 37.A.3 as imposing both an express obligation on S&B to mitigate costs related to a Force Majeure event and a corresponding implied obligation on Project Energy to compensate S&B for any costs it incurs in responding to a Force Majeure event. The essence of S&B's argument is that the contracts' firm, fixed price does not include S&B's costs incurred due to unforeseeable Force Majeure events. We cannot endorse this interpretation of the contracts.

It is a well-settled rule of contract interpretation that courts must read

---

[3] A "no damage for delay" clause gives a contractor the specific right to seek an extension of its time for performance in the event of a delay in consideration for the agreement not to seek damages for such delay. <u>Marriott Corp. v. Dasta Const. Co.</u>, 26 F.3d 1057, 1066–67 (11th Cir. 1994).

provisions of a contract harmoniously in order to give effect to all portions thereof. Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1242 (11th Cir. 2009) (internal quotations and citations omitted); Triple E Development Co. v. Floridagold Citrus Corp., 51 So. 2d 435, 438–39 (Fla. 1951). Under Florida law, a "contract should be considered as a whole in determining the intention of the parties to the instrument," City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000), and we "give effect to the plain language of contracts when that language is clear and unambiguous." Equity Lifestyle Props., 556 F.3d at 1242 (internal quotations and citations omitted).

A plain reading of the whole contract indicates that the parties intended to include all labor and materials costs in the firm, fixed price, even those arising from Force Majeure events. Although S&B is correct that some fixed price contracts may allow for recovery of additional compensation above the contract price, this is not the case here. Compare Roberts & Schaeffer Co. v. Hardaway Co., 152 F.3d 1283, 1297 (11th Cir. 1998) (holding that subcontractor could recover damages for overtime above the lump-sum contract price because the contract contained no clause indicating the subcontractor bore the risk of loss associated with unforeseen events) with Marriott Corp. v. Dasta Const. Co., 26 F.3d 1057, 1065–68 (11th Cir. 1994) (holding that contractor could not recover

6

damages over the lump-sum contract price because the contract contained provisions imposing risk of loss on contractor and an express "no damages for delay" provision).  The parties' contracts, like the contract in <u>Dasta</u>, unambiguously foreclose the recovery of additional compensation for costs incurred due to Force Majeure events, aside from the parties' agreement to modify the contract through a Section 11.C.8 change order or amendment.  No contract amendment has occurred here.

Not only are labor and materials included in the definition of "the Work" to be completed in consideration for the firm, fixed price, but the contracts include multiple provisions that expressly waive S&B's entitlement to compensation for the effects of Force Majeure events.  Section 37.A.3, the provision upon which S&B relies for its breach of contract claims, requires S&B to mitigate costs from Force Majeure events while also stating that "<u>in no event</u> shall Contractor be entitled to any increased costs, additional compensation, or damages of any type resulting from such Force Majeure delays." (emphasis added).[4]  Section 37.B.4 reiterates the prohibition, stating that "Contractor's sole and exclusive remedy for a Force Majeure event is an extension of time.  <u>Under no circumstances</u>

---

[4]  S&B argues that because Section 37.A.3 addresses Force Majeure "delays," and S&B timely completed the work despite the hurricanes and increased costs, i.e., there was no delay, the prohibition on additional compensation does not apply.  This argument has no merit.

whatsoever shall Contractor be entitled to compensation as the result of a Force Majeure event." (emphasis added). Moreover, Section 37 of the contract, which imposes S&B's mitigation obligation is not a compensation provision, but arises in a section of the contract addressing the parties' rights and obligations in light of unforeseen construction delays and Force Majeure events.[5]

No natural reading of the contract language gives rise to an interpretation that S&B's contractual obligation to mitigate costs in the event of a Force Majeure delay implicitly requires Project Energy to reimburse it for non-delay costs.[6] To read into the parties' contract such an obligation would nullify, not harmonize, multiple contract provisions. Furthermore, it would subvert the entire purpose of a fixed price contract to allow S&B to recover additional labor and materials costs when the benefit of a fixed price contract is to protect against price increases, labor shortages, material shortages, and the like. In contracting for the fixed price

_____

[5] S&B's argument that the contracts only waive its right to recover compensation for "reasonable hindrances and delays" also has no merit. See § 4.C ("Contractor shall make no claim against Owner for such reasonable hindrances and delays."). This provision expressly addresses the narrow circumstance in which the Owner reschedules the performance of "outage related Work" due to scheduled outages and shutdowns of electric utilities. Force Majeure events are addressed in Section 37 of the contracts, and the provisions therein govern the events at issue here.

[6] We also reject S&B's argument that its obligation to "mitigate any and all costs arising from or related to" a Force Majeure event necessarily implies that such costs are those payable to S&B for its incurred expenses over the contract price. The better reading of the provision, which harmonizes it with the remainder of the contract, is that the costs are those incurred by Project Energy, unrelated to the contract price but arising from Force Majeure events.

construction job, "the parties thoroughly addressed and allocated the risks" inherent in the project, and S&B could have increased its prices to reflect the risks it was assuming. Dasta, 26 F.3d at 1065–66, 1066. In sum, Project Energy has no contractual obligation to provide additional compensation to S&B above the contract price.

We also reject S&B's remaining arguments that it is entitled to an equitable adjustment for its additional expenditures; that we should supply an omitted compensation term pursuant to Section 204 of the Restatement of Contracts; and that Project Energy breached its covenant of good faith and fair dealing by refusing to compensate S&B for its additional costs.

S&B has no right to equitable adjustment here. The contracts only require an equitable adjustment in the event of Project Energy's temporary suspension of S&B's performance for a period of over six months. See § 22.C.2. In all other events, Project Energy has the discretion to agree to a request for a change order or contract amendment but is not required to do so. See § 12.

Nor is this an appropriate circumstance for supplying an omitted term pursuant to Section 204 of the Restatement of Contracts. Section 204 only allows a court to supply a missing contractual term when "parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to

9

a determination of their rights and duties." Restatement (Second) of Contracts § 204 (1981). There is no essential missing term or ambiguity here. To the contrary, the contracts expressly address whether S&B is entitled to compensation beyond the contract price for expenses arising from Force Majeure events and unambiguously state that it is not. We decline to create an ambiguity so that we may add terms which the parties have expressly omitted. Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 469 (5th Cir. 1968).

Finally, S&B cannot rely on the implied covenant of good faith and fair dealing as a basis for breach of contract. "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005) (internal citation and quotation omitted). S&B argues that because Project Energy had discretion to agree to a contract amendment, the implied covenant of good faith and fair dealing required it to exercise that right in good faith. This argument also fails.

The "[i]mplied duty of good faith may not be employed to vary or contradict the express terms of the contract, or deprive a party of express rights it otherwise would have under the contract. Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1291 (11th Cir. 2001). S&B and Project Energy negotiated a fixed

10

price construction contract containing express provisions for the remedies available to S&B in the event of unforeseen Force Majeure events such as hurricanes or changing labor or materials costs. Project Energy's refusal to amend the contracts to grant S&B compensation cannot be said to be "capricious nor in contravention of the parties' reasonable expectations" so as to violate the covenant, in light of the express provisions relating to Force Majeure damages. Id. at 1292.

S&B's exclusive remedy for such circumstances was an extension of time. The contract made plain that S&B bore the risk of these additional expenses and could have negotiated an alternate contract containing an escalation clause, a cost-plus arrangement, or a higher fixed price to protect against unforeseen expenses or increased its contract price to account for such risks. Courts will not rewrite unambiguous contracts to make them more advantageous for one of the parties or to "relieve one of the parties from the apparent hardship of an improvident bargain." Home Dev. Co. of St. Petersburg, Inc. v. Bursani, 178 So. 2d 113, 117 (Fla. 1965). Accordingly, the district court did not err in dismissing S&B's breach of contract claims.

## II. Wrongful Hiring

S&B also argues that the district court should not have dismissed its

wrongful hiring claims because Project Energy had an express or implied contractual duty not to interfere with S&B's staffing of the construction jobs, stemming from Section 30.F, which required S&B to place highly qualified personnel on the two projects. This argument is frivolous. S&B cannot sustain an express or implied breach of contract claim based on this provision, which imposes no obligations on Project Energy with respect to S&B's staffing of its construction jobs.

Nor can S&B state a claim for aiding and abetting S&B employees' breach of their fiduciary duty owed to S&B. To establish a cause of action for aiding and abetting a breach of fiduciary duty, S&B must allege: 1) a fiduciary duty on the part of the wrongdoer; 2) a breach of fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. Pearlman v. Alexis, No. 09-20865, 2009 WL 3161830, at *5 (Sept. 25, 2009) (slip copy). We agree with the district court that S&B's complaint does not provide enough factual allegations, which if true, to "raise a right to relief above the speculative level." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 958 (11th Cir. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1965, 1964 (2007)). The complaint is void of any facts other than conclusory allegations that Project Energy provided

12

substantial assistance to or encouragement of any wrongdoing by S&B employees. S&B's wrongful hiring claims fail as a matter of law, and we affirm the district court.

**AFFIRMED.**[7]

---

[7] Appellant's request for oral argument is denied.