648 So.2d 758 (1994)
Nanjunda SWAMY, M.D., and Nanjunda Swamy, M.D., P.A., Appellants,
v.
CADUCEUS SELF INSURANCE FUND, INC., Appellee.
No. 93-309.
District Court of Appeal of Florida, First District.
September 16, 1994.
Rehearing Denied February 16, 1995.
*759 Louis K. Rosenbloum and James A. Hightower of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellants.
W. Douglas Hall and Alan F. Wagner of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellee.
PER CURIAM.
Dr. Swamy (the insured) appeals from a final summary judgment denying recovery on his claim against his malpractice insurer, where he alleged that the insurer exhibited bad faith in failing to settle a medical malpractice action that had been brought against the doctor. Apparently, the trial court concluded that Dr. Swamy's claim was extinguished once his insurer satisfied the excess judgment that an injured patient obtained against Swamy in the underlying medical malpractice suit. We reject the notion that an insured's claim against his insurer is necessarily limited to the amount of the excess judgment, but, for the reasons set out below, we affirm the summary judgment that was entered in the instant case. Dr. Swamy also challenges the trial court's denial of his motion to add a claim for punitive damages, and the denial of his claim for attorney's fees, which rulings we affirm without further comment.
In 1988, Judith Hodges filed a medical malpractice action against Dr. Swamy which, in 1990, resulted in a judgment against Swamy in excess of $3 million. The judgment greatly exceeded the $1 million limit of Dr. Swamy's Caduceus malpractice policy.
While an appeal and cross-appeal of the malpractice judgment were pending in this court, Dr. Swamy brought suit against Caduceus for the insurer's bad faith in failing to settle the Hodges' malpractice claim within the policy limits. The suit, which was based upon common law bad faith as well as section 624.155, Florida Statutes, sought damages to compensate Dr. Swamy for the excess judgment, a loss of profits due to reduced referrals, and damage to professional reputation.
In 1991, on remand from this court following Hodges successful cross-appeal,[1] the trial court entered an amended final judgment that exceeded $4 million. Caduceus paid Hodges its $1 million policy limit. Thereafter, with Dr. Swamy's bad faith suit still pending, Caduceus commenced negotiations with Hodges, eventually agreeing to pay an additional $2 million in return for a satisfaction of the judgment and Hodges' unconditional release of Dr. Swamy and Caduceus.
Caduceus moved for summary judgment in Dr. Swamy's suit, arguing that its satisfaction of the excess judgment precluded further recovery by Dr. Swamy and, in essence, extinguished Swamy's cause of action for bad faith. The trial court agreed. On the authority of Fidelity and Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985), the trial court concluded that Caduceus' satisfaction of the excess judgment "exhausts all damages cognizable under Florida law in this cause for bad faith either statutorily under F.S. 624.155 or common law."
It is true that in most bad faith cases the excess judgment constitutes the extent of the provable damages. Dunn v. National Security Fire and Casualty Co., 631 So.2d 1103, 1106 (Fla. 5th DCA 1993); see 7C John A. Appleman, Insurance Law and Practice § 4711 (rev. ed. 1979) (in an action for bad faith in failing to settle a third party's claim, the insured's damages "generally is the amount for which the insured becomes charged in excess of his policy coverage"). Indeed, the amount the insured is obligated to pay to satisfy the excess judgment is the only measure of damages mentioned in the standard jury instruction for an insurer's bad faith failure to settle within policy limits. See Fla.Std.Jury Instr. (Civ.) MI 3.1.
On the question whether an insured tortfeasor's damages are necessarily limited to the excess judgment, we are not persuaded by the authorities cited as dispositive by *760 the parties,[2] but our own analysis leads us to conclude that additional damages may be recovered. First, it is clear that an insured may recover punitive damages for the carrier's bad faith failure to settle. See Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974). There is also support for recovery of direct consequential damages resulting from execution of an excess judgment. Thus, in Aetna Life & Casualty Co. v. Little, 384 So.2d 213 (Fla. 4th DCA 1980), the carrier refused to supersede the excess portion of a judgment, which resulted in execution on and destruction of the insured's business. In the insured's successful action against his carrier for bad faith failure to settle, the jury awarded damages for the loss of the business. The Fourth DCA affirmed a portion of the award that included the market value of the insured's business, which amount apparently exceeded the excess judgment. In short, at least in some cases, the maximum recovery is not limited to the excess judgment.
Of course, the instant case is not resolved by determining whether a hypothetical action alleging bad faith may be maintained once the excess judgment is satisfied. The question remains whether the damages actually pled by Dr. Swamy were recoverable in his action for bad faith at common law or pursuant to section 624.155, Florida Statutes.[3]
In Florida, when an insured brings an action against his carrier for failure to settle a third party's claim, the action sounds in contract. See Government Employees Ins. Co. v. Grounds, 332 So.2d 13 (Fla. 1976). Florida is in the minority in this respect, as most states treat this as a tort claim or as a combination of tort and contract. See R. Keeton and A. Widiss, Insurance Law, § 7.8(a), n. 9 (1988). Because it is a contract claim, the recoverable damages are more limited than they would be if the action sounded in tort. Id. at n. 13; William J. Appel, Annotation, Emotional or Mental Distress as Element of Damages for Liability Insurer's Wrongful Refusal to Settle, 57 A.L.R.4th 801, 804 (1987). Specifically, the damages for the insurer's breach of its contractual duty to its insured are limited to those that can be said to have been contemplated by the parties at the time of the formation of the insurance contract. Id.; see Farmers Ins. Exch. v. Henderson, 82 Ariz. 335, 313 P.2d 404, 409 (Ariz. 1957) (because insured's action against his insurer for bad faith failure to settle sounded in contract, the insured could not recover for damage to his business reputation where it could not be shown that a breach of the insurance contract would create such damage).
In the instant case, once the excess judgment was satisfied, Dr. Swamy's remaining damage claims consisted of alleged lost profits due to reduced referrals, and damage to *761 his professional reputation. In essence, Dr. Swamy sought to recover for losses resulting from the attendant negative publicity of the large excess judgment. Such damages are, at best, an indirect consequence of Caduceus' failure to settle. More importantly, the loss of reputation and referral cannot be said to have been within the contemplation of the parties to the insurance contract. Presumably, Dr. Swamy procured insurance to protect himself from the serious risks involved in practicing medicine. Insured and insurer must have contemplated that the insurer's bad faith in failing to settle a claim could jeopardize the insured's security by exposing him to an excess judgment. In such an event, the carrier could be liable for the amount of the excess judgment or damages resulting from execution. The possibility that negative publicity would be generated, which would then result in a loss of reputation and business, cannot be deemed the natural or contemplated result of the carrier's breach. In short, the damages claimed by Dr. Swamy were not recoverable in Florida, and the trial court properly entered summary judgment for Caduceus.
AFFIRMED.
MINER, MICKLE and DAVIS, JJ., concur.
NOTES
[1] See Swamy v. Hodges, 583 So.2d 1095 (Fla. 1st DCA), rev. denied, 593 So.2d 1053 (Fla. 1991).
[2] In Cope, supra, which was relied upon by Caduceus and the trial court, the bad faith action was brought by an injured third party (e.g., Hodges), as opposed to the insured tortfeasor (e.g., Dr. Swamy). The injured plaintiff in Cope released the tortfeasor, but then sought to recover the remaining excess judgment from the tortfeasor's insurer. The supreme court held that the injured plaintiff had no cause of action because there were no recoverable damages. The court reasoned that the third party's suit was based upon the damages the insured sustained as a result of the insurer's bad faith failure to settle. Since the insured, by virtue of his release, no longer had a cause of action to recover the excess judgment, then neither could the third party maintain such an action. Although there is language in the court's opinion that, when removed from the factual context, suggests that an insured's cause of action is limited to recovery of the excess judgment, we do not adopt so broad a reading of the court's opinion.

Dunn, supra, which is cited by Dr. Swamy, is another case in which the bad faith suit was brought by an injured third party. Unlike Cope, however, the injured plaintiff sought damages in addition to the excess judgment. The Fifth DCA found that direct consequential damages and other damages beyond the excess judgment "may be recoverable in appropriate cases." Dunn, 631 So.2d at 1106. Although the derivative nature of the injured third party's bad faith suit strongly suggests that the court would also approve the recovery of such additional damages in an action brought by the insured, we decline to cite Dunn as authority for this proposition.
[3] On the issue of recoverable damages, it does not appear to make a difference whether the bad faith action is brought as a common law claim or pursuant to section 624.155, Florida Statutes. Hollar v. International Bankers Ins. Co., 572 So.2d 937 (Fla. 3d DCA 1990), rev. dismissed, 582 So.2d 624 (Fla. 1991).